UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY L. HASKELL, | ) | CIV. 08-5097-JLV |
| | ) | |
| Plaintiff, | ) | ORDER REVERSING |
| | ) | DECISION OF THE |
| vs. | ) | COMMISSIONER AND |
| | ) | REMANDING CASE FOR |
| MICHAEL J. ASTRUE, | ) | CALCULATION AND AWARD |
| Commissioner, Social Security | ) | OF BENEFITS |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff filed for Disability Insurance Benefits (DIB) under

sections 216 and 223 of Title II of the Social Security Act (the "Act"), 42 U.S.C.

§§ 416(I) and 423, and for Supplemental Security Income (SSI) under §§ 1602

and 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1381(a), under a protective

filing date of December 21, 2005. (AR 10, 103-112).[1] The state agency and the

Social Security Administration denied plaintiff's applications initially and upon

reconsideration. (AR 56-59, 64-66, 69-74).

A hearing *de novo* was held before an Administrative Law Judge (ALJ) on

March 27, 2008. The ALJ issued a decision on April 19, 2008, determining

that plaintiff was not disabled within the meaning of the Act. (AR 7-22). The

_____

[1]The court will cite to information in the administrative record by
referencing "AR," followed by the appropriate page number(s) where the
information may be found.

Appeals Council denied plaintiff's request for review on October 29, 2008. (AR

1-3). Plaintiff timely filed his complaint with the court on December 30, 2008.

(Docket 1).[2] This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if supported by substantial

evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457

F.3d 865, 869 (8th Cir. 2006). The court must review the Commissioner's

decision to determine if an error of law has been committed. Smith v. Sullivan,

982 F.2d 308, 311 (8th Cir. 1992).

Substantial evidence is less than a preponderance, but enough evidence

that a reasonable mind might find it adequate to support the conclusion. Cox

v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006). Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support

the Commissioner's decision. Choate, at 869 (quoting Ellis v. Barnhart, 392

F.3d 988, 993 (8th Cir. 2005)). The review of a decision to deny disability

benefits is "more than an examination of the record for the existence of

substantial evidence in support of the Commissioner's decision . . . (the court

_____

[2]Plaintiff filed a motion for summary judgment supported by a
memorandum. (Docket 8, 9). Defendant filed a response and a memorandum.
(Docket 11). Neither party complied with D.S.D. LR 56.1 which requires
certain filings to frame the material facts in dispute. The court decides this
case on the merits of plaintiff's complaint (Docket 1) and defendant's answer
(Docket 5). For that reason, plaintiff's motion for summary judgment is moot.

must also) take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## APPLICATION OF THE ACT

The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits:

1. whether the claimant is currently engaged in or has been engaged in, substantial gainful activity since the alleged onset date;

2. whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe;

3. whether the impairment or combination of impairments meets or medically equals the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, disability is automatic);

4.   whether the claimant has the residual functional
     capacity (RFC) to perform the requirements of past
     relevant work; and finally,

5.   whether the claimant has the ability to do any other
     work considering his RFC, age, education and work
     experience.

20 C.F.R. §§ 404.1520, 416.920 (2008).

## BURDEN OF PROOF

The plaintiff has the burden of proof through step four.  Matthews v.

Eldridged, 424 U.S. 319, 335-36 (1976).  At step five the burden shifts to the

Administration to establish whether jobs exist in significant numbers in the

national economy which the plaintiff is capable of performing.  Bowen v.

Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  Only if step five is reached,

does the ALJ consider the claimant's age, education, and work experience in

light of claimant's RFC.  McCoy v. Schweiker, 683 F.2d 1138, 1142 (8th Cir.

1982); 20 C.F.R. §§ 404.1520, 416.920 (2008).  However, the ultimate burden

of persuasion to prove disability remains with the plaintiff.  68 Fed. Reg.

51153, 51155 (August 26, 2003); Harris v. Barnhart, 356 F.3d 926, 931 n.2

(8th Cir. 2004); Bowen, at 146 n.5.

A claimant for Social Security disability benefits has the burden of

proving his disability by establishing a physical or mental impairment lasting

at least twelve months that prevents him from engaging in any substantial

gainful activity.   Barnhart v. Walton, 535 U.S. 212, 220 (2002); 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

## ALJ FINDINGS

The ALJ made the following uncontested findings:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2007.  (AR 16).

2.  The claimant has not been engaged in substantial gainful activity since January 1, 2003, the alleged onset date.  (AR 16).

3.  The claimant has a history of cardiovascular disease with myocardial infarction in June 2002 and subsequent cardiac cath with stents, and diabetes, impairments considered to be "severe" under the Social Security Regulations.  (AR 16).

. . . .

6.  The claimant is unable to perform any past relevant work.  (AR 21).

7.  [T]he claimant was fifty-one years old on his alleged onset date, which is defined in the regulations as an individual closely approaching advanced age.  (AR 21).

8.  The claimant has at least a high school education and is able to communicate in English.  (AR 21).

9.  The claimant has acquired work skills from past relevant work.  (AR 21).

The findings of the ALJ which are disputed by plaintiff and are the subject of the court's review are:

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (AR 17).

5.     The claimant retains a residual functional capacity to lift and/or carry 30 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, who requires an ability to alternate between sitting and standing / walking every 30 to 45 minutes if needed, who is unlimited in push and/or pull activities (including operation of hand and/or foot controls) other than as stated above for lift and/or carry, occasionally climb ramps and steps but should not be required to climb ladders, ropes or scaffolds, frequently balance, kneel and crawl, occasionally stoop and crouch, occasionally reach overhead bilaterally, who should not be subject to concentrated exposure to extreme cold or vibration and should not be subjected to hazards of the workplace such as unprotected heights, dangerous machinery and things of that nature, who requires an ability to possess and use diabetic testing equipment and response to those results such as with medication, beverages, drinks, and things of that nature.  (AR 18).
. . . .

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy.  (AR 21).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2003 through the date of this decision.  (AR 22).

## FACTUAL BACKGROUND AND DISPUTED ISSUES

Plaintiff was 56 years of age as of December 31, 2007, the date he was last insured for purposes of DIB, and 57 years of age as of April 19, 2008, the date of the Commissioner's final decision for purposes of SSI.  (AR 110).  He has a twelfth-grade education, plus vocational training as a welder, and past work experience as a cashier, a food sales clerk, and a welder/fitter.  (AR 28-29, 151-152, 154, 178, 229, 232).  The parties have no dispute with these findings of the ALJ.

Plaintiff is 6 feet in height and weighs around 265 pounds.  (AR 16).  It is undisputed that he is considered to be "obese."  (AR 16).  In June of 2002 plaintiff, who is an insulin-controlled diabetic, was hospitalized for a myocardial infarction.  (AR 267).  As the result of that condition, plaintiff underwent an angioplasty and stenting of his right coronary artery.  (AR 264).  The ALJ found these conditions to be "severe" under the regulations.  (AR 16).  The parties have no dispute with this finding of the ALJ.

Additionally, it is undisputed that plaintiff has a diagnosis of "major depression with a generalized anxiety disorder."  (AR 17).  The ALJ found that these conditions, "considered singly [sic] and in combination" were "not severe" under the regulations.  (AR 17).  The parties have no dispute with this finding of the ALJ.

Plaintiff has degenerative disc disease of the cervical and lumbar spine and shoulder, and a history of lumbar L5-S1 discectomy, for a herniated disc, in 1994. (AR 16). The ALJ found these conditions to be "not severe" under the Social Security Regulations. (AR 16). Plaintiff disagrees with this finding.

The ALJ concluded, based upon the medical record, that while the "clinical opinions describe the shoulder and disc disease as 'mild,'" plaintiff had a "full range of motion of all joints . . . ." (AR 16). Consequently, the ALJ found there is "no evidence of any limitations in the claimant's ability to perform basic work activities based on these conditions." Without reference to the conditions of plaintiff's shoulders, the ALJ found that plaintiff's "degenerative disc disease and history of lumbar surgery" were "not severe." (AR 16). Against this backdrop, the medical evidence presented at the hearing, which was not specifically addressed or disputed by the ALJ, disclosed the following information.

Dr. Kevin Whittle, M.D., a medical consultant with the State DSS, completed a physical residual functional capacity assessment of plaintiff in April 2006. (AR 233-240). Dr. Whittle concluded (as accepted by the ALJ) plaintiff had the capacity to lift 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours in an 8-hour workday. (AR 234). Dr. Whittle further concluded that plaintiff's ability to perform "push and/or pull" activities was "limited in upper extremities." (AR 234). While the ALJ

concluded that Dr. Whittle failed to explain this limitation, the record shows otherwise. "Xrays of L spine and R shoulder show degenerative changes . . . reduced movement of right shoulder, he has markedly diminished extension internal rotation at R shoulder -- see C." (AR 234). Section C of Dr. Whittle's report - Manipulative Limitations - reported "limited reaching in all directions (including overhead)." (AR 236). Additionally, Dr. Whittle reported that among the plaintiff's ADL's (activities of daily living) he "drives manual shift truck with problems at times . . . ." (AR 234). Dr. Whittle then concluded that plaintiff's symptoms were consistent with his medical findings. (AR 238).

Likewise, the ALJ concluded that Dr. William Cook, "concurred with the opinions of Dr. Whittle except disagreed that the claimant had no environmental limitations." (AR 20). Since the ALJ did not specify otherwise, it must be presumed that Dr. Cook supported Dr. Whittle's conclusion that "clinical opinions describe the shoulder (problem) . . . as 'mild' (with a) "full range of motion of all joints . . . ." which caused no "limitations in the claimant's ability to perform basic work activities . . . ." (AR 16). Specifically, what Dr. Cook found is that plaintiff "also has pain in the rt. shoulder with some limitation of range of motion. Xray showed some degen.changes of the glenohumeral & AC joints & pain at extremes of motion." (AR 249).

The ALJ went on to decide that likewise Dr. Kristin Jensen, "generally agreed with the opinions of Dr. Whittle" relating to upper extremities

manipulation. While Dr. Jensen did generally agree with the opinions of Dr. Whittle on plaintiff's manipulative limitations, what she specifically acknowledged in her report was that "reaching in all directions (including overhead) was limited (in that) R.shoulder limit reaching to occasional." (AP 244). Dr. Jensen acknowledged the March 16, 2006, chiropractic note of Dr. Blickensderfer which found "[r]educed movement in R.shoulder, discomfort suggestive of rotator cuff. Markedly diminished extension/internal rotation." (AR 248). Dr. Jensen further concluded:

> [that plaintiff's] symptoms are attributable to medically determinable impairments; physical exams do not document objective severe abnormalities. Pain is considered a factor in reducing PRFC estimates of capabilities . . . . 3/16/06 xrays . . . R.shoulder: joint space narrowing of glenohumeral joint, mild narrowing at the AC joint with inferior spurring.

(AR 246, 248).

While the decision of the ALJ specifically mentioned plaintiff's chiropractor, Dr. Blickensderfer, the ALJ did so only with respect to plaintiff's low back related issues. (AR 20). Without the benefit of an MRI or physical therapy because of plaintiff's economic situation, Dr. Blickensderfer reported:

> Right now I do believe that he can sit in a job which would require this. Standing would be difficult at this point due to the radiculitis or circulatory problem in the low back. Moving about short distances would be fine. This all comes back to conditioning. Lifting with a previous back surgery and a bad shoulder would be limited to not much more than 25 lbs in a consistent manner. Carrying would be limited as to weight and distance . . . Traveling offers him moderate discomfort . . . .

(AR 326).

Not referenced by the ALJ was a clinical note referring to the right shoulder in Dr. Blickensderfer's chart of January 2, 2006:

> There are no degenerative changes or spurring within the shoulder itself. I did examine the right shoulder and checked the rotator cuff. It is extremely weak and painful in any external rotation motion.

(AR 328).

The ALJ made no specific references to either Dr. Nabwangu, a neurologist, or to Dr. Papendick, an orthopedic surgeon, with whom plaintiff had treated and whose medical records and reports appear in the record. (AR [Exhibit 13F] 381-384, [Exhibit 14F & 15F] 417-429 [Exhibit 16F] 430-433, [Exhibit 17F] 434-437). The ALJ made only passing reference to the exhibits constituting their records. (AR 16).

Dr. Nabwangu initially reported on December 12, 2006, that plaintiff was complaining of "left arm pain radiating into the triceps and down to his thumb, index and 3rd finger . . . he feels like his left arm is weak." (AR 381). Upon examination, Dr. Nabwangu reported:

> UPPER EXTREMITIES: This patient has full range of motion of all joints. Muscle tone is normal. Gross motor strength testing of the upper extremities does reveal some weakness of the left deltoid and left biceps and left wrist extensors with slight decrease in his left grip . . . .

(AR 383). Dr. Nabwangu recommended physical therapy. (AR 384).

After a period of physical therapy Dr. Nabwangu's records reflect that the unresolved pain issues remained in plaintiff's left arm and shoulder range of

motion.  (AR 417).  The previously established physical therapy goals were never reached with plaintiff:

1.  Improve cervical spine range of motion to rotate right and left 65 degrees or better.  This was partially met.

2.  Improve right shoulder adduction to 30 degrees or better.  This is not met.

3.  Improve combined extension internal rotation of his right and left shoulder to reach midline.  This is not met.
    . . . .

(AR 418, 421).

Evaluation of this shoulder condition continued into Dr. Nabwangu's June 29, 2007, record of his final examination of plaintiff.  "This patient has discomfort over the left rotator cuff when stressing it and some deceased range of motion of the left shoulder."  (AR 430).  Because of this unresolved status, Dr. Nabwangu referred plaintiff to an orthopedic surgeon, Dr. Papendick.  (AR 430).

On July 19, 2007, plaintiff was initially examined by Dr. Papendick. That examination disclosed:

the left shoulder shows restricted internal and external rotation.  His Whipple test is weak.  Supraspinatus test is weak, but he does have atrophy of the parascapular muscle groups as well.  No instability. The right shoulder has deceased motion, slight deceased strength, no instability and no palpable pain.

(AR 435).  Dr. Papendick reported that ordered x-rays disclosed the "left shoulder show[s] slight narrowing of the glenohumeral joint.  There is a little

sclerotic change of his greater tuberosity." (AR 435). Under "Assessment," Dr.

Papendick stated "Left shoulder pain and weakness. He may have a cuff tear,

it may be due to his arthritis." (AR 435). A MRI was ordered.

The MRI report of July 23, 2007, contains the following findings:

> AC arthrosis is of mild severity. Subacromial spurring gives rise to
> moderate lateral outlet stenosis . . . . A tiny slit-like partial-thickness
> tear involves the supraspinatus interstitium far distally in a
> background of mild severity tendinosis and low-grade inflammation
> of the pericuff tissues. No high-grade partial - or full thickness cuff
> macrotear at this time. Subscapularis is minimally tendinopathic
> . . . . The labrum is truncated and degenerated superiorly and
> posteriorly with capsulitis and pericapsular swelling indicative of a
> low-grade adhesive capsulitis . . . .

(AR 436). On July 31, 2007, Dr. Papendick called plaintiff and reported in his

chart the MRI results. "It shows evidence of adhesive capsulitis. There is a

tiny slit-like partial thickness tear of the supraspinatus, but surgery will not

help that." (AR 434).

In his decision, the ALJ wrote:

> [t]he claimant has described daily activities which are not limited to
> the extent one would expect, given the complaints of disabling
> symptoms and limitations. At one point or another in the record
> . . . claimant reports he attends to his personal needs and hygiene,
> drives his manual transmission pick-up truck regularly, prepares
> meals, goes grocery shopping and goes other shopping, performs all
> household chores including washing dishes by hand, vacuuming and
> mopping, does household repairs, goes deer hunting, goes fishing,
> and performs yard work including mowing the lawn with a "human
> propelled" mower and removing snow with a snow-blower, and he
> works in the garden.

(AR 19).  The transcript of plaintiff's hearing testimony provides insight into his

daily activities:

> Q:    Are you registered with vocational rehabilitation or
>        anyone like that?
> A:    No.
> Q:    Why not?
> A:    I can't seem to do anything for a very long period of
>        time.
> Q:    What is it that you think causes your inability to do
>        anything for a very long time?
> A:    Pain.
> Q:    Where?
> A:    In my neck, my shoulders, my back and my legs.
> Q:    . . . right shoulder, left shoulder, or both?
> A:    Both shoulders.

(AR 32).  Plaintiff acknowledged that he takes no pain medication for his

condition.  (AR 33).

The ALJ did not specifically ask the plaintiff about his operation of his

standard transmission pickup.  (AR 34).  But Dr. Whittle noted in the Physical

Residual Functional Capacity Assessment of April of 2006, that plaintiff "drives

[a] manual shift truck with problems at times . . . ."  (AR 234).

Plaintiff testified he did "a little yard work . . . I do a little bit at a time."

(AR 37).  He used a "human propelled" small, push mower.  (AR 37).  Plaintiff

did not garden, but helped his mother "a little bit . . . I don't do too much.  She

doesn't raise much of a garden, just a few tomato plants mostly."  (AR 37).

When using a weed eater, plaintiff does so "a little bit [but has to] take

quite a few breaks.  I can only do it for very short periods of time, and then I

have to rest." Ten or fifteen minutes is the maximum time plaintiff estimates he can operate a weed eater. (AR 41). Contrary to the finding of the ALJ that plaintiff used a snow blower, plaintiff testified that he had one, "(b)ut it takes, to manipulate it, even though they're (inaudible), it's still -- I have one, but I haven't ran it in several years." (AR 41).

Plaintiff testified that "once in a while [he] goes fishing or hunting . . . a little bit" and harvested a deer in the preceding deer season. (AR 38). That process is explained as "I do a little bit of walking, short distances. But mostly . . . we just drive around in pickups and sit there. Where we hunt is fairly easy . . . . if you see a deer, you can drive right up to it." (AR 47).

Plaintiff's lay witness and longtime friend Marc Paulson reported in his written statement:

20. HOBBIES AND INTERESTS

c. Describe any changes in these activities since the illnesses, injuries, or conditions began: can not spend all day sitting in the boat or while he is hunting do much walking.

(AR 203). At question 22a, Mr. Paulson circled the following items that are affected by plaintiff's illnesses, injuries, or conditions: "Lifting, Squatting, Bending, Standing, Reaching, Walking, Sitting, Kneeling, Stair-Climbing, Using Hands . . . ." (AR 204).

Plaintiff testified that the distance he could walk until he needed to stop and rest as "not very far 100-200 yds." (AR 204). Plaintiff acknowledged he

15

fished from a boat with a friend "[m]aybe three, four times [a year]. It might not even be that many in the last year." (AR 39). While plaintiff is able to dress himself and do zippers, he has "a little bit of trouble with [his] left hand [and buttons]." (AR 39). He mainly wears pullover t-shirts and sweatshirts. (AR 40). Around the house, plaintiff testified he has "done dishes." (AR 40). He "can put dishes in [the dishwasher}" and does "some by hand, pots and pans." (AR 40). Vacuuming, mopping and dusting are limited to "a little bit." (AR 40).

When asked about his ability to sit or stand for extended periods of time, plaintiff testified:

> Q. If you can move around, shift your positions while you're sitting down, how long can you be seated?
> A. About a half-hour.
> Q. If you can move around and shift your positions while you're standing up, how long can you stand?
> A. About 15 minutes standing.
> Q. And what happens after 15 minutes?
> A. My left leg starts going numb on the surface, and then it starts . . . . burning down inside, hurting. It gets so bad I have to sit down . . . I have to get off of it.

(AR 43). Plaintiff can only walk about one or two blocks at a time. (AR 43).

Regarding his ability to use his hands for manipulation, plaintiff testified:

> Q. Can you handle things like a cup of coffee or a can of pop?
> A. I can a little bit with my right hand. My left hand is not quite so sure . . . . I don't know why, but I have a tendency to drop things with my left hand especially.
> Q. Can you use a pen or a pencil?
> A. Sometimes with my right hand.
> Q. If you have change in your hand, can you pick out a dime or a penny?

16

| A. | Yeah. With my right hand, I can. |
|----|-----|

. . . .

| Q. | Are you able to reach for items on a table . . . items in front of you or next to you? |
|----|-----|
| A. | No. Not very -- not for very long. |

. . . .

| Q. | How about overhead like . . . kitchen cabinets? |
|----|-----|
| A. | Well, I really have a hard time there, very hard. |

. . . .

| Q. | . . . if you're trying to do something on a table in front of you, reaching forward . . . how long are you able to do that with your right arm? |
|----|-----|
| A. | Well, maybe about five minutes or so. |
| Q. | And then what happens? |
| A. | . . . my right shoulder starts hurting and I get weak. |
| Q. | So if you do that for about five minutes, and have to pull back, about how long is it before you can reach forward and do that again? |
| A. | About . . . 15 minutes, I suppose. |
| Q. | Can you do that all day, alternate like that? |
| A. | I don't think so. |
| Q. | The pain just gets worse? |
| A. | Right. |
| Q. | Your left arm is worse. Is that right? |
| A. | Yes. |
| Q. | About how long can you reach in front of you and do something? |
| A. | About a minute or two, if that. |
| Q. | And then how long do you have to stop? |
| A. | About a half-hour. |

(AR 43-46).

At the administrative hearing the ALJ had William Tisdale, a vocational rehabilitation counselor testify. (AR 48). The specific hypothetical question posed to him, as relevant to this appeal, was:

> I'd like you to assume . . . the existence of a hypothetical worker of Claimant's age, education and past work experience. Assume that this worker can occasionally lift and carry up to 30 pounds,

frequently lift and carry ten pounds or less. They can stand and/or walk for about six hours in an eight-hour day with normal breaks, and sit for the same. They should work where they can alternate, if need be, between sitting, and standing, and walking every half-hour to three-quarters of an hour. Pushing and pulling would be at the same level as lift and carry. They are limited to occasionally going up or down stairs or steps, but never ladders, . . . things like that. Frequently balance and kneel, only occasionally stoop, crouch, frequently crawl, only occasionally reach overhead with either upper extremity. They need to work where they're not subjected to concentrated exposure to extreme cold . . . no exposure to hazards of the workplace . . . things like that . . . . So for worker number one, could they perform any of the Claimant's past relevant work?

(AR 52). In response, using The Dictionary of Occupational Titles (DOT), Mr.

Tisdale testified:

I would say that that individual could perform the cashier work . . . as performed in the DOT. Probably on a limited basis sale clerk food. Also, I would say the cashier would be on a limited basis...some cashiers would be required to be on their feet more than -- or not be able to alternate . . . . So on a limited basis, both the cashier and the sales clerk, food.

(AR 52-53). When questioned about sedentary transferable skilled jobs, Mr.

Tisdale then identified only one, single job as a "telephone solicitor." (AR 53).

When questioned about the "incidents of handling" that are required by a

cashier and a food sales clerk, Mr. Tisdale identified "frequently." (AR 53). Mr.

Tisdale acknowledged these jobs require frequent, bilateral handling with both

upper extremities, including the ability to "reach in front of them." (AR 54).

## DISCUSSION

Objective medical evidence of impairment or resultant limitations in

plaintiff's use of his upper extremities appears throughout this record. Wilson

v. Apfel, 172 F.3d 539, 541-42 (8th Cir. 1999). This objective medical evidence, coupled with plaintiff's subjective descriptions to the numerous physicians and examiners and his specific testimony at the hearing on these issues, was either ignored or minimized by the ALJ. While it may have been proper for the ALJ to discount or discredit plaintiff's testimony in the absence of objective medical evidence, the ALJ cannot simply ignore the objective medical evidence which substantiates and gives credibility to plaintiff's descriptions of the limitations of functional use of his arms, hands and fingers. Holmstrom v. Massanari, 270 F.3d 715, 722 (8th Cir. 2001).

The attempt by the ALJ to minimize the objective medical evidence and then use that minimization as a justification to discount plaintiff's testimony constitutes error as a matter of law. The ALJ failed to properly detail the reasons for rejecting or minimizing plaintiff's testimony, particularly in light of the clear, objective medical evidence which supported his testimony. Masterson v. Barnhart, 363 F.3d 731, 738-739 (8th Cir. 2004). The ALJ failed to "demonstrate that he considered all of the evidence." Id. at 738. The records cited by the ALJ in general summary fashion, when examined in detail, do not contain inconsistencies which contradict, but rather, support plaintiff's testimony. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Guilliams v. Barnhart, 393 F.3d 798, 801-802 (8th Cir. 2005).

Based upon the record as a whole, there is no substantial evidence to support the decision of the ALJ that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006).

Under Appendix 1 section 1.00(B)(2)(a), "functional loss for the purpose of these listings is defined as . . . the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." (Emphasis added). Appendix 1 section 1.00(B)(2)(c) further focuses on this issue:

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities.

(Emphasis added).

Under the Appendix, plaintiff's assertion of pain in the fine and gross motor functioning of both arms must be confirmed by the medical records. "In order for pain . . . to be found to affect an individual's ability to perform basic work activities, medical signs or laboratory findings must show the existence of a medically determinable impairment(s) that could reasonably be expected to produce the pain or other symptoms." Appendix 1 section1.00(B)(2)(d). The medical records before the ALJ did just that. See infra pages 8 through 13.

The combination of the musculoskeletal condition and pain constituted a "major dysfunction" of plaintiff's shoulders because they resulted in his inability to "perform fine and gross movement effectively . . . ." Appendix 1.1.02(B). The substantial evidence discloses that plaintiff's impairments of his shoulders were "severe" and prevented plaintiff from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c)(2008). The applicable provisions of Appendix 1 of Subpart P of 20 C.F.R. Part 404, combined to logically focus on the provisions relevant to this case, create the following description of an impairment which automatically qualifies as disabling:

> Major dysfunction of a joint . . . characterized by gross anatomical deformity . . . bony or fibrous ankylosis [stiffness]...and chronic joint pain and stiffness with signs of limitation of motion . . .and findings on appropriate medically acceptable imaging of joint space . . . ankylosis. With involvement of one major peripheral joint in each upper extremity (shoulder), resulting in inability to perform fine and gross movements effectively. Loss of function for this purpose is described as the inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment that interferes very seriously with an individual's ability to independently initiate, sustain or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living (i.e., the inability to sort and handle papers or files).

1.1.02, 1.1.02B(2), 1.00B2(c).

Plaintiff's medical imaging reflects that he has adhesive capsulitis (frozen shoulder due to fibrous stiffness). Examinations by his physicians disclosed he had significant internal and external rotation impingement with both shoulders.

These conditions interfered with his ability to perform fine and gross movements, that is, reaching, pushing, pulling and fingering for more than a few minutes, after which he would be required to rest of up to 15 minutes before he could initiate such repetitive movements.  By this description, plaintiff is not able to use his shoulders effectively to carry out activities of daily living – such as the ability to operate from a desk and sort and handle papers or files. Under the application of Appendix 1, plaintiff is disabled at step three of the sequential evaluation of 20 C.F.R. § 1520(a)(4)(iii).

Even if the court is incorrect in its assessment and ruling at this juncture in the application of the Appendix, the evaluation process must still go through step five, the "final steps of the sequential evaluation process."  Appendix 1.00(1)(H)(4).  Thus, if the ALJ properly determined that plaintiff's impairments or combination of impairments did not meet the criteria for an automatic declaration of disability, the Administration still had the burden of proof at step five of the sequential evaluation process.  McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2008).

The ALJ incorrectly assessed plaintiff's residual functional capacity. 20 C.F.R. §§ 404.1527(f)(2), 404.1546, 416.927(f)(2), 416.945 (2008).  The ALJ placed significant weight upon the ability of the plaintiff to do a number of daily activities.  (AR 19-20).  But even in identifying those activities, the ALJ either overstated them or failed to acknowledge that plaintiff's ability to perform those

functions was "limited" or "required frequent rest breaks."  Insignificant daily activities may be consistent with claims of disabling pain.  Gulliams, 393 F.3d at 802.  Plaintiff "need not prove (he) is bedridden or completely helpless to be found disabled."  Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (citing, Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)). That plaintiff had the ability to do some light housework or other activities does not support the assertion that plaintiff "can perform full-time competitive work."  Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996) (internal citation omitted); Rainey v. Department of Health & Human Servs., 48 F.3d 292, 293 (8th Cir. 1995) ("the ALJ did not indicate how these minor activities were . . . consistent with his ability to engage in light work.").

In view of the objective medical evidence, coupled with plaintiff's subjective complaints and descriptions of the restrictions upon his physical activity capabilities, the question posed by the ALJ to Mr. Tisdale, the vocational rehabilitation counselor (VE), was an improper hypothetical question.  Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001) (citation omitted).  "The point of the hypothetical question is to clearly present to the VE a set of limitations that mirror those of the claimant."  Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996).

"Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence."  Cruze v. Chater, 85 F.3d 1320, 1323 (8th

Cir. 1996); Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir.1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision).  The question posed by the ALJ was not properly supported by the evidence in the record.  Consequently, the answer of Mr. Tisdale is not adequate to sustain the burden of proof of the Administration.  Since it is undisputed that plaintiff, under step four of the sequential step analysis, cannot return to his previous employment, the "burden shifts to the (Commissioner) to prove that jobs exist in the national economy that the (plaintiff) could perform." Morse v. Shalala, 32 F.3d 1228, 1230 n.2 (8th Cir. 1994).

Under its analysis, the court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing.  42 U.S.C. § 409(g).  If the court determines that the "record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which the plaintiff is entitled, reversal is appropriate." Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).

## CONCLUSION

Plaintiff, with the impairments acknowledged by the Commissioner to exist, coupled with the decision of this court, and considering his age, education, work experience, and residual functional capacity, does not have work skills that are transferrable to other occupations with jobs existing in

significant numbers in the national economy and is "disabled" as contemplated by the Social Security Act. 20 C.F.R. 404.1520(g) and 416.920(g). Accordingly, it is hereby

ORDERED that the decision of the Commissioner is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff to which he is entitled under the Act.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket 8) is denied as moot.

IT IS FURTHER ORDERED that the Clerk of Courts enter judgment in favor of plaintiff Gregory L. Haskell and against defendant Michael J. Astrue, Commissioner of the Social Security Administration.

Dated March 27, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE